## Case No. 8,622a.

### LYLE v. The CONESTOGA.

[4 Am. Law J. (N. S.) 183.]

Circuit Court, E. D. Pennsylvania. 1851.[1]

COLLISION—CONFLICT OF TESTIMONY—ACCOUNTA-
BILITY OF STEAM VESSELS.

[1. Steamboats should be held to a rigorous rule of accountability. Steam vessels are always considered as having the wind free, and must always give away.]

[2. In the case of a collision·between two vessels. and a direct conflict of testimony, the court will, in deciding the case, look to the reasonableness of the two stories. deciding for the more reasonable story, bearing in mind that in these cases the probabilities are that neither side tells the whole truth. Case No. 8,622, affirmed.]

[Appeal from the district court of the United States for the Eastern district of Pennsylvania.]

[This was a libel by the owners of the schooner Margaret against the charterers of the steamer Conestoga, for damages for collision. The claimants filed a cross-bill for damages from the same collision. The court, dismissing the libel, reserved its decision as to the claim of the respondents. Case No. 8,-622. Libelants appealed.]

R. R. Smith, for libellant.

Mr. Kane and H. Wharton, contra.

GRIER, Circuit Justice. I have heard this case twice argued, and very ably argued, by the learned counsel. I have carefully examined the testimony two or three times, and have been unable to get rid of the conviction that the steamboat was, in this case, (as in almost all others,) in fault for this collision with the schooner, and that her owners should pay for the loss incurred. There are no principles of law in dispute in this case. The rules which govern cases of this sort are well stated by the learned judge of the district court. The law imposes on the vessel having the wind free, the obligation of taking proper measures to get out of the way of a vessel close-hauled, and of showing it had done so; if not, the owners are responsible for the loss that shall ensue. Steam vessels are always considered as having the wind free, and must always give away.

The difficulty in this case, as in most others, is with the facts, not the law. It is vain to expect the truth from the steersman or pilot of the colliding boat. He will not admit that he was drunk or asleep, or paying no attention, and not keeping a proper look-out. In all instances where a steamboat runs down a sailing vessel, by attempting to pass under her bows when she should have ported her helm, the pilot invariably swears that the vessels were steering entirely clear of one another, when suddenly, as they were about to pass, the schooner luffed right across the bows of the steamboat, and the pilot of the schooner invariably swears, that, while the

boats could easily have passed the larboard of each other, without even porting the helm, the steamboat turned right across the track of the schooner and run her down. Take the story of the steamboat pilot as true, and the schooner must have purposely run under the bows of the steamboat; while, by. the story of the other, the steamboat must have purposely run down the schooner. And such is the case before us. I do not believe the statement of either of the pilots; they each endeavor to make out a strong case for their own side, but make it a little too strong. I have observed in all such cases that other persons on board the steamboat, whose attention is never turned to the matter until the very moment of the collision, will very honestly swear that the schooner luffed across the bows of the steamboat, because it would appear so to them, who could not distinguish between the motion of their own boat and that of the other. Besides, when through the carelessness of a steamboat, a schooner, running closehauled to the wind, is about to be run down, the steersman will naturally cause her to luff to the wind, to lighten the effect of the collision. In many, if not all cases, the luffing, if there be any at all before the collision, is caused by the apprehension of immediate and certain collision, and is not the cause of the collision. There may be cases (I have known one) in which the steersman of the schooner, by attempting to get out of the way, when he should have left that duty entirely to the steamboat, has, by his ignorance and officiousness, been the cause of the collision. But I cannot be satisfied from the testimony in this case, that it comes within that description.

These points seem to me clear: The steamboat, in passing Marcus Hook, had sheered out considerably into the river, and was running a northeast course, which would take her towards the western shore, as she was desirous to keep near it. The schooner was laying her course from the middle of the river for the mouth of Hook Creek, where she intended to stop. It was before daylight in the morning, when, though vessels might be seen at some distance, their exact position or course could not be so easily distinguished; those on board of the schooner might easily suppose that the steamboat was in the middle or far side of the river, for her relative position in the river would not be easily discovered without a correct estimate of her distance. The pilot of the steamboat might on a hasty view, form the same notion as to the position of the schooner. He would take it for.granted that the schooner would continue on down the middle of the river, as he was ignorant of her intention to run to the mouth of Hook Creek, and knowing his own intention to run as near the shore as he could, he concluded that there would be no danger of the boats approximating, when, in fact, they were approximating a point at which their course would intersect. The captain or

mate had retired, evidently under this supposition. The lookout had retired to warm himself at the chimneys. The pilot supposing the schooner to be on her course down the river, says, "he could not tell where she was bound, further than down the river;" instead of running obliquely for the shore, keeps on his course for the point of intersection, he hears the hails and shouts from the schooner as he approached her, and, instead of porting his helm, he admits he "starboarded his wheel a little," and this was all he did, by his own statement, to avoid the collision, with the exception of attempting to stop his boat after the collision had become inevitable. It was his duty to keep out of the way and avoid the collision. I am not satisfied that he did anything to that end, even from his own statement. Either from a want of a proper look-out, or from his own inattention, he had failed to observe that the course of the schooner was to the mouth of the Hook creek, and "that" (in the words of Captain Tuft.) makes a difference and a very important difference in the case. The character of the injury received by the steamer in the collision, is supposed to confirm the story of the steamboat pilot and refute that of the pilot of the schooner. This is true, if we must assume that one of them has spoken the whole truth, and the other is entirely false. But, as I have said, the tale of either of them, as the whole truth, is incredible; they each tell the stereotyped story, to be found in every case of the kind, and always false. Allowing the usual percentage upon the admission of the pilot of the steamboat, that he "starboarded his helm a little," and that the schooner had luffed into the wind to evade the force of the collision, when it had become inevitable, as she would naturally do, there is no difficulty in perceiving that the starboard side of the stem of the steamboat might first come in contact with the schooner. On the whole I am convinced, from a careful examination of the testimony: 1. That the steamboat had not a proper look-out, under the circumstances of her situation. 2. That the schooner was running her proper course for the point of destination. 3. That the steamboat pilot, either from want of attention in himself, or of a proper look-out, was not aware of the fact. 4. That he took no proper measures to avoid the collision, when he might have done it with ease, and that starboarding his helm, when warned by the shouts from the schooner of the probable collision, only increased the certainty of it, and shows from his own confession, his want of attention or proper lookout, and an absence of all proper endeavors to avoid a collision till it was too late.

I am convinced that it was necessary to the safety of sailing vessels, that steamboats be held to a rigorous rule of accountability. If the story of the steamboat pilot, that the schooner, running a course clear of the steamboat, suddenly luffs in the wind to throw herself in the way of the steamboat, apparently with the intention of getting herself run down, and floats herself against a steamboat standing still and is thus sunk,—I say, if such a story is expected to be believed, it must be better corroborated than it has been in this case. Let judgment be entered for the libellant, and the case referred to the clerk to assess damages.

[For proceeding respecting costs, see Case No. 9,070.]